TERRY G. OPPERMANN  #2764
Seven Waterfront Plaza
500 Ala Moana Blvd., Suite #7-400
Honolulu, Hawaii  96813-4920
PH:  (808) 543-8330
FAX: (808) 833-2744

Attorney for Plaintiff
JACK DENNIS CONROW SR.

FILED

2009 SEP -9 PM 12: 25

L. CHINEN, CLERK
THIRD CIRCUIT COURT
STATE OF HAWAII

IN THE CIRCUIT COURT OF THE THIRD CIRCUIT

STATE OF HAWAII

JACK DENNIS CONROW, SR.,

       Plaintiff,

    vs.

MIRAD FINANCIAL GROUP,
MORTGAGE ELECTRONIC
REGISTRATION GROUP, AURORA
LOAN SERVICES LLC, JOHN DOES
1-9. JANE DOES 1-9, DOE PART-
NERSHIPS 1-9, DOE CORPORATIONS
1-9, DOE LIMITED LIABILITY
COMPANIES 1-9, DOE ENTITIES
1-9, and DOE GOVERNMENTAL
ENTITIES 1-9,

       Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Civil No.  09-1 -0317
(Puna)
(Foreclosure)

COMPLAINT; DEMAND FOR
JURY TRIAL; EXHIBITS
"A"-"C"; SUMMONS

## COMPLAINT

COMES now Plaintiff, JACK DENNIS CONROW, SR., by and through his attorney, TERRY G. OPPERMANN, and submits his Complaint as follows:

1.  Plaintiff is the purchaser of real property located at 15-1665 13th Avenue; Keaau, HI  96749, Fee Simple; TMK No.: (3)1-5-047-155-0000 (hereinafter referred to as "Keaau Prop.").

2.  Said Keaau Prop. is subject to a mortgage, dated September 21, 2006, and recorded in the Bureau of Conveyances of the State of Hawaii on October 6, 2006 as Doc. No. 3494158

I hereby certify that this is a full, true and correct
copy of the original on file in this office.

L. Chinen

Clerk, Third Circuit Court, State of Hawaii



on Cert. No. 827,178. (hereinafter referred to as "Mortgage 1" and attached hereto as Exhibit "A") .

3.   The amount borrowed pursuant to said Mortgage 1 is $106,250.00.

4.   The "Borrower" on said Mortgage 1 is listed as "JACK DENNIS CONROW SR., husband of Olita Conrow, as tenant in severalty".

5.   The "Mortgagee" on said Mortgage 1 is listed as the "MORTGAGE ELECTRONIC REGISTRATION SYSTEM, INC. ("MERS") (solely as nominee for Lender, as hereinafter defined, and Lender's successors and assigns).

6.   Said Mortgage 1 states that MERS is organized and existing under the laws of Delaware and has an address of P.O. Box 2026, Flint, MI 48501-2026.

7.   Said Mortgage 1 states that the Lender is MIRAD FINANCIAL GROUP, A CALIFORNIA CORPORATION, ("MIRAD"), existing under the laws of California and has an address of 613 West Valley Parkway, Suite 305; Escondido, California 92025.

8.   Said Keaau Prop. is also subject to a mortgage, dated September 21, 2006, and recorded in the Bureau of Conveyances of the State of Hawaii on October 6, 2006 as Doc. No. 3494157 on Cert. 827,178. (referred to as "Mortgage 2  and Exhibit "B").

9.   The amount borrowed pursuant to said Mortgage 2 was $318,750.00.

10.  The "Borrower" on said Mortgage 2 is listed as "JACK DENNIS CONROW SR., husband of Olita Conrow, as tenant in severalty".

5.   The "Mortgagee" on said Mortgage 2 is listed as the "MORTGAGE ELECTRONIC REGISTRATION SYSTEM, INC. ("MERS") (solely as nominee for Lender, as hereinafter defined, and Lender's successors and assigns).

6.   Said Mortgage 2 states that MERS is organized and existing under the laws of Delaware and has an address of P.O. Box 2026, Flint, MI 48501-2026.

7.   Said Mortgage 2 states that the Lender is MIRAD FINANCIAL GROUP, A CALIFORNIA CORPORATION, existing under the

laws of California and has an address of 613 West Valley Parkway, Suite 305; Escondido, California 92025.

8.   By way of a letter, dated August 10, 2009, MERS acting "solely as Nominee for AURORA LOAN SERVICES LLC, ("AURORA"), gave "Notice of Mortgagee's Intention to Foreclose Under Power of Sale". (See Exhibit "C" attached).

9.   Plaintiff never received any notice that the loan had been sold or transferred to AURORA LOAN SERVICES, LLC nor to any other loan servicer or entity.

10.   The Real Estate Settlement Procedures Act ("RESPA"); RESPA 12 USCA B 2605) requires that notices regarding the sale or transfer of the loan and/or servicing agent be provided to the consumer not less than 15 days before and not more than 15 days after the sale or transfer.

11.   Paragraph 20 of Mortgage 2 requires that Plaintiff above-named be given written notice of any sale or transfer of the loan.

12.   Plaintiff never received any notice of transfer to AURORA or any other entity.

13.   Paragraphs 20 and 22 of Mortgage 2 and paragraphs 17 and 18 of Mortgage 1, also, state that Plaintiff above-named will be given Notice of Acceleration, an Opportunity to Cure and an Opportunity to Reinstate.

14.   Plaintiff never received any such Notices.

15.   Defendants MIRAD and MERS knew, or had reason to know, that there was no way that Plaintiff's income was sufficient to qualify for the loan and, therefore, told Plaintiff to exaggerate his stated income and apply for a "stated" loan whereby they would not take any steps to verify his income and thereby approve an Adjustable Rate Mortgage (ARM) loan for a higher interest rate despite the fact that Plaintiff would never be able to make the payments.

16.   Defendants MIRAD AND MERS virtually assured that Plaintiff would not be able to make the payments required by the stated loan when, at the last minute, they added a "Second Home Rider"that prevented Plaintiff from obtaining additional

-3-

income by renting the Keaau Prop.

17. The acts alleged in paragraphs 15 and 16 above constituted "Predatory Lending Practices".

18. Plaintiff entered into two mortgages with MERS and MIRAD with respect to the Keaau Prop. but received no Good Faith Estimate (hereinafter referred to as "GFE") and no HUD-1 as required by RESPA.

19. Plaintiff did not receive any "Truth-In-Lending Notice" from Defendants as required by the "Truth In Lending Act" section of the Consumer Protection Act of 1968.

20. Defendants designated as John Does 1-9, Jane Does 1-9, Doe Partnerships 1-9, Doe Corporations, Doe Limited Liability Companies 1-9, Doe Entities 1-9 are sued herein under fictitious names for the reason that their true names identities and capacities are presently unknown to Plaintiff, who believes that they are the persons or entitles acting as agents, purchasers, assignees, nominees, of the interests held by the named Defendants and/or were in some manner, presently unknown to Plaintiff, engaged in the activities alleged herein or failed to engage in required activities or duties such that they are in some manner responsible for the injuries or damages of Plaintiff or are in some other way related to the allegations contained in this Complaint and that their true names, identities, capacities activities, and/or responsibilities are presently unknown to Plaintiff and his attorney. Plaintiff prays for leave to amend this Complaint to insert their true names, capacities, activities and/or responsibilities when the same are ascertained.

21. Plaintiff and his representative have made diligent and good faith efforts to ascertain the full names and identities and interest in this action of the above Doe defendants described in paragraph 20 above and their precise capacities and liabilities. However, at this time, Plaintiff is unable to determine said identities, capacities and liabilities and reserves the right to do so.

CAUSES OF ACTION

FIRST CAUSE OF ACTION:

1.   Plaintiffs  realloge  everything  set  forth  in  all proceeding paragraphs;

2.   Plaintiffs have a cause or cause(s) of action against Defendants for breach of promise for the failure of Defendants to give <u>notice of acceleration</u> as required by paragraph 17 of Mortgage 1 and paragraph 22 of Mortgage 2.

SECOND CAUSE OF ACTION:

3.   Plaintiffs  realloge  everything  set  forth  in  all proceeding paragraphs;

4.   Plaintiffs have a cause or cause(s) of action against Defendants for breach of promise for the failure of Defendants to give <u>notice of the action required to cure</u> the default as required  by  paragraph  17  of  Mortgage  1  and  paragraph  22  of Mortgage 2.

THIRD CAUSE OF ACTION:

5.   Plaintiffs  realloge  everything  set  forth  in  all proceeding paragraphs;

6.   Plaintiffs have a cause or cause(s) of action against Defendants for breach of promise for the failure of Defendants to give <u>notice of the change or changes of Loan Servicers</u> as required  by paragraph 20 of Mortgage 2.

FOURTH CAUSE OF ACTION:

7.   Plaintiffs  realloge  everything  set  forth  in  all proceeding paragraphs;

8.   Plaintiffs have a cause or cause(s) of action against

Defendants for breach of promise for the failure of Defendants to give <u>notice of the right to reinstate</u> as required by paragraph 18 of Mortgage 1 and by paragraph 22 of Mortgage 2.

<u>FIFTH CAUSE OF ACTION</u>:

9.   Plaintiffs   reallege   everything   set   forth   in   all proceeding paragraphs;

10.   Plaintiffs have a cause or cause(s) of action against Defendants   for   failure   of   Defendants   to   give   <u>notice   of   the sale or transfer of the loans or servicing of the loans</u> expressed in Mortgages 1 and 2 as required by <u>RESPA</u>.

<u>SIXTH CAUSE OF ACTION</u>:

11.   Plaintiffs   reallege   everything   set   forth   in   all proceeding paragraphs;

12.   Plaintiffs have a cause or cause(s) of action against Defendants for Unfair and Deceptive Trade Practices in violation of HRS §480-2.

<u>SEVENTH CAUSE OF ACTION</u>:

13.   Plaintiffs   reallege   everything   set   forth   in   all proceeding paragraphs;

14.   Plaintiffs have a cause or cause(s) of action against Defendants in Estoppel.

<u>EIGHTH CAUSE OF ACTION</u>:

15.   Plaintiffs   reallege   everything   set   forth   in   all proceeding paragraphs;

16.   Plaintiffs have a cause or cause(s) of action against Defendants in Equity because real estate is involved.

<u>NINTH CAUSE OF ACTION</u>:

17. Plaintiffs reallege everything set forth in all proceeding paragraphs;

18. Plaintiffs have a cause or cause(s) of action against Defendants due to Failure of a Condition Precedent.

TENTH CAUSE OF ACTION:

19. Plaintiffs reallege everything set forth in all proceeding paragraphs;

20. Plaintiffs have a cause or cause(s) of action against Defendants on the basis that the Mortgages were unconscionable based on the circumstances of this case.

ELEVENTH CAUSE OF ACTION:

21. Plaintiffs reallege everything set forth in all proceeding paragraphs;

22. Plaintiffs have a cause or cause(s) of action against Defendants on the basis that the Mortgages and associated actions violated the requirement of "Good Faith and Fair Dealing" which is imposed on all contracts.

TWELFTH CAUSE OF ACTION:

23. Plaintiffs reallege everything set forth in all proceeding paragraphs;

24. Plaintiffs have a cause or cause(s) of action against Defendants on the basis that the Defendants failed to comply with RESPA in manners other than as set forth in paragraphs 10 and 19 of the allegations section above.

THIRTEENTH CAUSE OF ACTION:

25. Plaintiffs reallege everything set forth in all proceeding paragraphs;

26. Plaintiffs have a cause or cause(s) of action against Defendants on the basis that the Defendants failed to comply with RESPA in manners other than as set forth in paragraphs 10, 18 and 19 above.

FOURTEENTH CAUSE OF ACTION:

27. Plaintiffs reallege everything set forth in all proceeding paragraphs;

28. Plaintiffs have a cause or cause(s) of action against Defendants on the basis that the Defendants failed to comply with the Truth-In-Lending Act.

FIFTEENTH CAUSE OF ACTION:

29. Plaintiffs reallege everything set forth in all proceeding paragraphs;

30. Plaintiffs have a cause or cause(s) of action against Defendants on the basis that the Defendants failed to comply with the requirements of Home Ownership and Equity Protection Act.

SIXTEENTH CAUSE OF ACTION:

31. Plaintiffs reallege everything set forth in all proceeding paragraphs;

32. Plaintiffs have a cause or cause(s) of action against Defendants on the basis that the Defendants failed to comply with the requirements of the Fair and Accurate Transaction Act of 2003.

PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief as follows:

1. For general damages in an amount to be proven at time

of trial;

    2.   For compensatory damages in an amount to be proven at time of trial;

    3.   For punitive damages in an amount to be proven at time of trial;

    4.   For statutory damages as authorized by applicable laws and statutes specifically including, but not limited to, treble damages and attorney's fees;

    5.   For equitable relief as deemed appropriate;

    6.   For costs and attorney's fees;

    7. For leave to amend this Complaint, pursuant to paragraphs 20 and 21 above to include Defendants currently identified as John Does 1-9, Jane Does 1-9, Doe Partnerships 1-9, Doe Corporations 1-9, Doe Limited Liability Companies 1-9, Doe Entities 1-9, Doe Governmental Entities 1-9 in the event that their identities and capacities become known at a later date;

    8.   For such other and further relief as this Court deems just and proper.

    DATED: Honolulu, Hawaii, September 8, 2009

                       _Terry A. Oppermann_
                       TERRY G. OPPERMANN
                       Attorney for Plaintiff
                       JACK DENNIS CONROW SR.

## DEMAND FOR JURY TRIAL

DEFENDANTS DEMAND JURY TRIAL WITH RESPECT TO ALL ISSUES SO TRIABLE BY JURY.

DATED:  Honolulu, Hawai'i   September 8, 2009.

TERRY G. OPPERMANN
Attorney for Defendants





L-318       STATE OF HAWAII
OFFICE OF ASSISTANT REGISTRAR
RECORDED
OCT 06, 2006        08:01 AM

Doc No(s) 3494158
on Cert(s) 827,178

/s/ CARL T. WATANABE
ASSISTANT REGISTRAR

20    3/3    Z1

Return by Mail ( ✓ )  Pickup (  )  To:

Name: MIRAD FINANCIAL GROUP
Address: 613 WEST VALLEY PARKWAY, SUITE 305
ESCONDIDO, CALIFORNIA 92025

TG: *200633316 A*

TGE: *463021020*

DEBRA N. TOMONO

Tax Map Key No.: 3-1-5-47-155

# MORTGAGE                    Loan Number: 4602333

MIN: 1000713-0004602333-5

THIS MORTGAGE is made this 21st day of   SEPTEMBER, 2006       , between the
Mortgagor JACK DENNIS CONROW SR., husband of Olita Conrow, as tenant in severalty.

(herein "Borrower"), and the Mortgagee,
Mortgage Electronic Registration Systems, Inc. ("MERS"), (solely as nominee for Lender, as hereinafter defined,
and Lender's successors and assigns). MERS is organized and existing under the laws of Delaware, and has an
address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
MIRAD FINANCIAL GROUP, A CALIFORNIA CORPORATION
is organized and existing under the laws of  CALIFORNIA              and has an address of
613 WEST VALLEY PARKWAY, SUITE 305, ESCONDIDO, CALIFORNIA 92025

(herein "Lender").

WHEREAS, Borrower is indebted to Lender in the principal sum of U.S. $106,250.00       which
indebtedness is evidenced by Borrower's note dated SEPTEMBER 21, 2006        and extensions and
renewals thereof (herein "Note"), providing for monthly installments of principal and interest, with the balance of
the indebtedness, if not sooner paid, due and payable on OCTOBER 1, 2021

HAWAII - SECOND MORTGAGE - 7/80           Page 1 of 8           DocMagic €Forms 800-649-1362
3812 - AS AMENDED FOR MERS                                      www.docmagic.com

TO SECURE to Lender the repayment of the indebtedness evidenced by the Note, with interest thereon; the payment of all other sums, with interest thereon, advanced in accordance herewith to protect the security of this Mortgage; and the performance of the covenants and agreements of Borrower herein contained, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with power of sale, the following described property located in the County of HAWAII                                    , State of Hawaii:
SEE COMPLETE LEGAL DESCRIPTION IN EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.
A.P.N.: 3-1-5-47-155

THIS SECURITY INSTRUMENT IS SUBORDINATE TO AN EXISTING FIRST LIEN(S) OF RECORD.

which has the address of 15-1665 13TH AVENUE
                                                    [Street]
KEAAU                                , Hawaii            96749            (herein "Property Address");
                [City]                                              [Zip Code]

TOGETHER with all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances and rents, all of which shall be deemed to be and remain a part of the property covered by this Mortgage; and all of the foregoing, together with said property (or the leasehold estate if this Mortgage is on a leasehold) are hereinafter referred to as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Mortgage; but, if necessary to comply with law or custom, MERS, (as nominee for Lender and Lender's successors and assigns), has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing or cancelling this Mortgage.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property, and that the Property is unencumbered, except for encumbrances of record. Borrower covenants that Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to encumbrances of record.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
1.   Payment of Principal and Interest. Borrower shall promptly pay when due the principal and interest indebtedness evidenced by the Note and late charges as provided in the Note.
2.   Funds for Taxes and Insurance. Subject to applicable law or a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments of principal and interest are payable under the Note, until the Note is paid in full, a sum (herein "Funds") equal to one-twelfth of the yearly taxes and assessments (including condominium and planned unit development assessments, if any) which may attain priority over this Mortgage and ground rents on the Property, if any, plus one-twelfth of yearly premium installments for hazard insurance, plus one-twelfth of yearly premium installments for mortgage insurance, if any, all as reasonably estimated initially and from time to time by Lender on the basis of assessments and bills and reasonable estimates thereof. Borrower shall not be obligated to make such payments of Funds to Lender to the extent that Borrower makes such payments to the holder of a prior mortgage or deed of trust if such holder is an institutional lender.

If Borrower pays Funds to Lender, the Funds shall be held in an institution the deposits or accounts of which are insured or guaranteed by a Federal or state agency (including Lender if Lender is such an institution). Lender

shall apply the Funds to pay said taxes, assessments, insurance premiums and ground rents.  Lender may not charge for so holding and applying the Funds, analyzing said account or verifying and compiling said assessments and bills, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Borrower and Lender may agree in writing at the time of execution of this Mortgage that interest on the Funds shall be paid to Borrower, and unless such agreement is made or applicable law requires such interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds.  Lender shall give to Borrower, without charge, an annual accounting of the Funds showing credits and debits to the Funds and the purpose for which each debit to the Funds was made.  The Funds are pledged as additional security for the sums secured by this Mortgage.

If the amount of the Funds held by Lender, together with the future monthly installments of Funds payable prior to the due dates of taxes, assessments, insurance premiums and ground rents, shall exceed the amount required to pay said taxes, assessments, insurance premiums and ground rents as they fall due, such excess shall be, at Borrower's option, either promptly repaid to Borrower or credited to Borrower on monthly installments of Funds.  If the amount of the Funds held by Lender shall not be sufficient to pay taxes, assessments, insurance premiums and ground rents as they fall due, Borrower shall pay to Lender any amount necessary to make up the deficiency in one or more payments as Lender may require.

Upon payment in full of all sums secured by this Mortgage, Lender shall promptly refund to Borrower any Funds held by Lender.  If under paragraph 17 hereof the Property is sold or the Property is otherwise acquired by Lender, Lender shall apply, no later than immediately prior to the sale of the Property or its acquisition by Lender, any Funds held by Lender at the time of application as a credit against the sums secured by this Mortgage.

3.   **Application of Payments.**  Unless applicable law provides otherwise, all payments received by Lender under the Note and paragraphs 1 and 2 hereof shall be applied by Lender first in payment of amounts payable to Lender by Borrower under paragraph 2 hereof, then to interest payable on the Note, and then to the principal of the Note.

4.   **Prior Mortgages and Deeds of Trust; Charges; Liens.**  Borrower shall perform all of Borrower's obligations under any mortgage, deed of trust or other security agreement with a lien which has priority over this Mortgage, including Borrower's covenants to make payments when due.  Borrower shall pay or cause to be paid all taxes, assessments and other charges, fines and impositions attributable to the Property which may attain a priority over this Mortgage, and leasehold payments or ground rents, if any.

5.   **Hazard Insurance.**  Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage", and such other hazards as Lender may require and in such amounts and for such periods as Lender may require.

The insurance carrier providing the insurance shall be chosen by Borrower subject to approval by Lender; provided, that such approval shall not be unreasonably withheld.  All insurance policies and renewals thereof shall be in a form acceptable to Lender and shall include a standard mortgage clause in favor of and in a form acceptable to Lender.  Lender shall have the right to hold the policies and renewals thereof, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Mortgage.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender.  Lender may make proof of loss if not made promptly by Borrower.

If the Property is abandoned by Borrower, or if Borrower fails to respond to Lender within 30 days from the date notice is mailed by Lender to Borrower that the insurance carrier offers to settle a claim for insurance benefits, Lender is authorized to collect and apply the insurance proceeds at Lender's option either to restoration or repair of the Property or to the sums secured by this Mortgage.

6.   **Preservation and Maintenance of Property; Leaseholds; Condominiums; Planned Unit Developments.**  Borrower shall keep the Property in good repair and shall not commit waste or permit impairment or deterioration of the Property and shall comply with the provisions of any lease if this Mortgage is on a leasehold.  If this Mortgage is on a unit in a condominium or a planned unit development, Borrower shall perform all of Borrower's obligations under the declaration or covenants creating or governing the condominium or planned unit development, the by-laws and regulations of the condominium or planned unit development, and constituent documents.

7.   **Protection of Lender's Security.**  If Borrower fails to perform the covenants and agreements contained in this Mortgage, or if any action or proceeding is commenced which materially affects Lender's interest in the Property, then Lender, at Lender's option, upon notice to Borrower, may make such appearances, disburse such sums, including

HAWAII - SECOND MORTGAGE - 1/80
3812 - AS AMENDED FOR MERS                          Page 3 of 8                          DocMagic eForms 800-649-1362
www.docmagic.com

reasonable attorneys' fees, and take such action as is necessary to protect Lender's interest. If Lender required mortgage insurance as a condition of making the loan secured by this Mortgage, Borrower shall pay the premiums required to maintain such insurance in effect until such time as the requirement for such insurance terminates in accordance with Borrower's and Lender's written agreement or applicable law.

Any amounts disbursed by Lender pursuant to this paragraph 7, with interest thereon, at the Note rate, shall become additional indebtedness of Borrower secured by this Mortgage. Unless Borrower and Lender agree to other terms of payment, such amounts shall be payable upon notice from Lender to Borrower requesting payment thereof. Nothing contained in this paragraph 7 shall require Lender to incur any expense or take any action hereunder.

**8.   Inspection.** Lender may make or cause to be made reasonable entries upon and inspections of the Property, provided that Lender shall give Borrower notice prior to any such inspection specifying reasonable cause therefor related to Lender's interest in the Property.

**9.   Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of the Property, or part thereof, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Mortgage.

**10.   Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Mortgage granted by Lender to any successor in interest of Borrower shall not operate to release, in any manner, the liability of the original Borrower and Borrower's successors in interest. Lender shall not be required to commence proceedings against such successor or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Mortgage by reason of any demand made by the original Borrower and Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

**11.   Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements herein contained shall bind, and the rights hereunder shall inure to, the respective successors and assigns of Lender and Borrower, subject to the provisions of paragraph 16 hereof. All covenants and agreements of Borrower shall be joint and several. Any Borrower who co-signs this Mortgage, but does not execute the Note, (a) is co-signing this Mortgage only to mortgage, grant and convey that Borrower's interest in the Property to Lender under the terms of this Mortgage, (b) is not personally liable on the Note or under this Mortgage, and (c) agrees that Lender and any other Borrower hereunder may agree to extend, modify, forbear, or make any other accommodations with regard to the terms of this Mortgage or the Note without that Borrower's consent and without releasing that Borrower or modifying this Mortgage as to that Borrower's interest in the Property.

**12.   Notice.** Except for any notice required under applicable law to be given in another manner, (a) any notice to Borrower provided for in this Mortgage shall be given by delivering it or by mailing such notice by certified mail addressed to Borrower at the Property Address or at such other address as Borrower may designate by notice to Lender as provided herein, and (b) any notice to Lender shall be given by certified mail to Lender's address stated herein or to such other address as Lender may designate by notice to Borrower as provided herein. Any notice provided for in this Mortgage shall be deemed to have been given to Borrower or Lender when given in the manner designated herein.

**13.   Governing Law; Severability.** The state and local laws applicable to this Mortgage shall be the laws of the jurisdiction in which the Property is located. The foregoing sentence shall not limit the applicability of Federal law to this Mortgage. In the event that any provision or clause of this Mortgage or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Mortgage or the Note which can be given effect without the conflicting provision, and to this end the provisions of this Mortgage and the Note are declared to be severable. As used herein, "costs", "expenses" and "attorneys' fees" include all sums to the extent not prohibited by applicable law or limited herein.

**14.   Borrower's Copy.** Borrower shall be furnished a conformed copy of the Note and of this Mortgage at the time of execution or after recordation hereof.

**15.   Rehabilitation Loan Agreement.** Borrower shall fulfill all of Borrower's obligations under any home rehabilitation, improvement, repair, or other loan agreement which Borrower enters into with Lender. Lender, at Lender's option, may require Borrower to execute and deliver to Lender, in a form acceptable to Lender, an

HAWAII - SECOND MORTGAGE - 1/80
3812 - AS AMENDED FOR MERS                     Page 4 of 8                     DocMagic eForms 800-649-1362
                                                                              www.docmagic.com

assignment of any rights, claims or defenses which Borrower may have against parties who supply labor, materials or services in connection with improvements made to the Property.

**16.   Transfer of the Property or a Beneficial Interest in Borrower.**  If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Mortgage.  However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Mortgage.

If Lender exercises this option, Lender shall give Borrower notice of acceleration.  The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Mortgage.  If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Mortgage without further notice or demand on Borrower.

**NON-UNIFORM COVENANTS.**  Borrower and Lender further covenant and agree as follows:

**17.   Acceleration; Remedies.**   Except as provided in paragraph 16 hereof, upon Borrower's breach of any covenant or agreement of Borrower in this Mortgage, including the covenants to pay when due any sums secured by this Mortgage, Lender prior to acceleration shall give notice to Borrower as provided in paragraph 12 hereof specifying: (1) the breach; (2) the action required to cure such breach; (3) a date, not less than 10 days from the date the notice is mailed to Borrower, by which such breach must be cured; and (4) that failure to cure such breach on or before the date specified in the notice may result in acceleration of the sums secured by this Mortgage and sale of the Property.  The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the nonexistence of a default or any other defense of Borrower to acceleration and sale.  If the breach is not cured on or before the date specified in the notice, Lender, at Lender's option, may declare all of the sums secured by this Mortgage to be immediately due and payable without further demand and may invoke the power of sale and any other remedies permitted by applicable law.  Lender shall be entitled to collect all reasonable costs and expenses incurred in pursuing the remedies provided in this paragraph 17, including, but not limited to, reasonable attorneys' fees.

If Lender invokes the power of sale, Lender shall mail Borrower a notice of sale in the manner provided in paragraph 12 hereof.  Lender shall publish a notice of sale and shall sell the Property at the time and place and under the terms specified in the notice of sale.  Lender or Lender's designee may purchase the Property at any sale.  The proceeds of any sale shall be applied in the following order: (a) to all reasonable costs and expenses of the sale, including, but not limited to, reasonable attorneys' fees and costs of title evidence; (b) to all sums secured by this Mortgage; and (c) the excess, if any, to the person or persons legally entitled thereto.

**18.   Borrower's Right to Reinstate.**   Notwithstanding Lender's acceleration of the sums secured by this Mortgage due to Borrower's breach, Borrower shall have the right to have any proceedings begun by Lender to enforce this Mortgage discontinued at any time prior to the earlier to occur of (i) the fifth day before sale of the Property pursuant to the power of sale contained in the Mortgage or (ii) entry of a judgment enforcing this Mortgage or (iii) 30 days from the certified date upon which Lender entered upon and took possession of the Property if: (a) Borrower pays Lender all sums which would be then due under this Mortgage and the Note had no acceleration occurred; (b) Borrower cures all breaches of any other covenants or agreements of Borrower contained in this Mortgage; (c) Borrower pays all reasonable expenses incurred by Lender in enforcing the covenants and agreements of Borrower contained in this Mortgage, and in enforcing Lender's remedies as provided in paragraph 17 hereof, including, but not limited to, reasonable attorneys' fees; and (d) Borrower takes such action as Lender may reasonably require to assure that the lien of this Mortgage in the Property and Borrower's obligation to pay the sums secured by this Mortgage shall continue unimpaired.  Upon such payment and cure by Borrower, this Mortgage and the obligations secured hereby shall remain in full force and effect as if no acceleration had occurred.

**19.   Assignment of Rents; Appointment of Receiver.**   As additional security hereunder, Borrower hereby assigns to Lender the rents of the Property, provided that Borrower shall, prior to acceleration under paragraph 17 hereof or abandonment of the Property, have the right to collect and retain such rents as they become due and payable.

Upon acceleration under paragraph 17 hereof or abandonment of the Property, Lender shall be entitled to have a receiver appointed by a court to enter upon, take possession of and manage the Property and to collect the rents of the Property including those past due.  All rents collected by the receiver shall be applied first to payment of the costs

of management of the Property and collection of rents, including, but not limited to, receiver's fees, premiums on receiver's bonds and reasonable attorneys' fees, and then to the sums secured by this Mortgage. The receiver shall be liable to account only for those rents actually received.

20. **Release.** Upon payment of all sums secured by this Mortgage, Lender shall release this Mortgage without charge to Borrower. Borrower shall pay all costs of recordation, if any.

21. **Waiver of Dower and Curtesy.** Borrower hereby relinquishes all right of dower and curtesy in the Property.

22. The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider      ☐ Condominium Rider              ☒ Second Home Rider
☒ Balloon Rider              ☐ Planned Unit Development Rider  ☒ Other(s) [specify]
☐ 1-4 Family Rider           ☐ Biweekly Payment Rider         PREPAYMENT RIDER
                                                              TO SECURITY INST

State of ~~Hawaii~~ *TEXAS*                )
~~County of~~ *DALLAS*                      ) SS.
County of ~~HAWAII~~                        )

SR. On *September 21, 2006* before me personally appeared JACK DENNIS CONROW

to me known to be the person or persons described in and who executed the foregoing instrument, and acknowledged that the person or persons executed the same as the person's or persons' free act and deed.

*Venessa Gutierrez*
Notary Public

*Venessa Gutierrez*
(Typed or Printed Name of Notary Public)

My commission expires: *Jan 4, 2010*

YENESSA GUTIERREZ
Notary Public, State of Texas
My Commission Expires
January 04, 2010

TMK: (3) 1-5-047-155

**EXHIBIT "A"**

All of those certain parcels of land situate at Keaau, District of Puna, Island and County of Hawaii, State of Hawaii, described as follows:

-PARCEL FIRST:-

LOT 1203, area 1.000 acre, more or less, BLOCK 7, as shown on Map 58, filed in the Office of the Assistant Registrar of the Land Court of the State of Hawaii with Land Court Application No. 1053 (amended) of W. H. Shipman, Limited;

-PARCEL SECOND:-

An undivided 1/5750 interest in Lots 60, 62, 8297, 8363, 8385, 8387 and 3115 in Block 7, and Lot 1 in Block 10; as shown on Maps 10, 10, 55, 56, 56, 57, 58 and 65, respectively, of said Land Court Application No. 1053 (amended); and Lot 4-B, as shown on Map 2 of Land Court Application No. 1689 of W. H. Shipman, Limited, to be used in common with others entitled thereto, for roadway and utility purposes only;

Being the land(s) described in Transfer Certificate of Title No. 746,040 issued to HPP 13TH AVENUE - 155 LIMITED PARTNERSHIP, a Hawaii Limited Partnership.

Being land(s) described in Transfer Certificate of Title No. _827,178_ and acquired by Land Court Document No. _3494157_.

Subject to any and all liens and/or encumbrances of record.

————————————————————[Space Above This Line For Recording Data]————————————————————

Loan Number: 4602333

# BALLOON RIDER

THIS BALLOON RIDER is made this 21st day of SEPTEMBER 2006 , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Note (the "Note") to MIRAD FINANCIAL GROUP, A CALIFORNIA CORPORATION
(the "Lender") of the same date and covering the property described in the Security Instrument and located at:

15-1665 13TH AVENUE, KEAAU, HAWAII 96749
[Property Address]

The interest rate stated on the Note is called the "Note Rate." The date of the Note is called the "Note Date." I understand the Lender may transfer the Note, Security Instrument and this Rider. The Lender or anyone who takes the Note, the Security Instrument and this Rider by transfer and who is entitled to receive payments under the Note is called the "Note Holder."

ADDITIONAL COVENANTS. In addition to the covenants and agreements in the Security Instrument, Borrower and Lender further covenant and agree as follows (despite anything to the contrary contained in the Security Instrument or the Note):

THIS LOAN IS PAYABLE IN FULL AT MATURITY. YOU MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN AND UNPAID INTEREST THEN DUE. THE LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME. YOU WILL, THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT YOU MAY OWN, OR YOU WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER YOU HAVE THIS LOAN WITH, WILLING TO LEND YOU THE MONEY. IF YOU REFINANCE THIS LOAN AT MATURITY, YOU MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF YOU OBTAIN REFINANCING FROM THE SAME LENDER.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Balloon Rider.

_____   _____
Borrower JACK DENNIS CONROW  Date   Borrower                    Date
SR.

_____   _____
Borrower                    Date   Borrower                    Date

_____   _____
Borrower                    Date   Borrower                    Date

MULTISTATE BALLOON RIDER
04/28/04                      Page 2 of 2            DocMagic eForms 800-649-1362
                                                     www.docmagic.com

Loan Number: 4602333

# SECOND HOME RIDER

THIS SECOND HOME RIDER is made on this   21st   day of SEPTEMBER   ,
2006       , and is incorporated into and shall be deemed to amend and supplement the Mortgage,
Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the
"Borrower"), whether there are one or more persons undersigned) to secure Borrower's Note to
MIRAD FINANCIAL GROUP, A CALIFORNIA CORPORATION          (the "Lender")
of the same date and covering the property described in the Security Instrument (the "Property"), which is
located at

15-1665 13TH AVENUE, KEAAU, HAWAII 96749
[Property Address]

In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender
further covenant and agree that Uniform Covenant 6 of the Security Instrument is deleted and is replaced by
the following:

6. Occupancy and Use; Preservation, Maintenance and Protection of the Property; Borrower's Loan
Application; Leaseholds. Borrower shall occupy, and shall only use, the property as Borrower's second
home. Borrower shall keep the Property available for Borrower's exclusive use and enjoyment at all times,
and shall not subject the Property to any timesharing or other shared ownership arrangement or to any rental
pool or agreement that requires Borrower either to rent the Property or give a management firm or any other
person any control over the occupancy or use of the Property. Borrower shall not destroy, damage or impair
the Property, allow the Property to deteriorate, or commit waste on the Property. Borrower shall be in
default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith
judgement could result in forfeiture of the Property or otherwise materially impair the lien created by this
Security Instrument or Lender's security interest. Borrower may cure such a default and reinstate, as
provided in paragraph 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's
good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material
impairment of the lien created by this Security Instrument or Lender's security interest. Borrower shall also
be in default if Borrower, during the loan application process, gave materially false or inaccurate information
or statements to Lender (or failed to provide Lender with any material information) in connection with the
loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy
and use of the Property as a second home. If this Security Instrument is on a leasehold, Borrower shall
comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and
the fee title shall not merge unless Lender agrees to the merger in writing.

MULTISTATE SECOND HOME RIDER
04/06/04                                    Page 1 of 2                       DocMagic eForms 800-649-1362
                                                                              www.docmagic.com

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this Second Home Rider.

_____ (Seal)
JACK DENNIS CONROW        -Borrower
SR.

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

# PREPAYMENT RIDER

Loan Number:  4602333

Date:  SEPTEMBER 21, 2006

Borrower(s):   JACK DENNIS CONROW SR.


THIS PREPAYMENT RIDER (the "Rider") is made this 21st day of SEPTEMBER 2006        , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure repayment of Borrower's promissory note (the "Note") in favor of MIRAD FINANCIAL GROUP, A CALIFORNIA CORPORATION

("Lender").  The Security Instrument encumbers the Property more specifically described in the Security Instrument and located at

15-1665 13TH AVENUE, KEAAU, HAWAII 96749
[Property Address]

ADDITIONAL COVENANTS.  In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A.    PREPAYMENT CHARGE**
The Note provides for the payment of a prepayment charge as follows:

### 4   .  BORROWER'S RIGHT TO PREPAY; PREPAYMENT CHARGE

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment."  When I make a Prepayment, I will tell the Note Holder in writing that I am doing so.  I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under the Note.  However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note.  If I make a partial Prepayment, there will be no changes in the due dates of my monthly payment unless the Note Holder agrees in writing to those changes.

If the Note contains provisions for a variable interest rate, my partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment.  However, any reduction due to my partial Prepayment may be offset by an interest rate increase.  If this Note provides for a variable interest rate or finance charge, and the interest rate or finance charge at any time exceeds the legal limit under which a Prepayment penalty is allowed, then the Note Holder's right to assess a Prepayment penalty will be determined under applicable law.

MULTISTATE PREPAYMENT RIDER - SPP
6/03                                     Page 1 of 2                    DocMagic eForms 800-649-1362
                                                                        www.docmagic.com

If within TWENTY-FOUR ( 24 ) months from the date the Security Instrument is executed I make a full Prepayment or one or more partial Prepayments, and the total of all such Prepayments in any 12-month period exceeds twenty percent (20%) of the original Principal amount of the loan, I will pay a Prepayment charge in an amount equal to SIX ( 6 ) months' advance interest on the amount by which the total of my Prepayments within any 12-month period exceeds twenty percent (20%) of the original Principal amount of the loan.

Notwithstanding the foregoing provisions, I may make a full Prepayment without paying a Prepayment charge in connection with a bona fide and arms-length sale of all or any part of, or any legal or beneficial interest in, the Property within the first 0 months of the term of the Note. The phrase "bona fide and arms-length sale" means a sale in which all of the parties involved in the transaction, including without limitation, the buyer, seller, lender, real estate agent or broker, are independent of one another and unrelated by familial or financial interests. I agree to provide the Note Holder with any and all evidence reasonably requested by the Note Holder to substantiate that the sale of the Property is bona fide and arms-length.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this Rider.

_____ (Seal)  
JACK DENNIS CONROW        -Borrower  
SR.

_____ (Seal)  
                          -Borrower

_____ (Seal)  
                          -Borrower

_____ (Seal)  
                          -Borrower

_____ (Seal)  
                          -Borrower

_____ (Seal)  
                          -Borrower

EXHIBIT "B"



L-317        STATE OF HAWAII
OFFICE OF ASSISTANT REGISTRAR
RECORDED
OCT 06, 2006        08:01 AM

Doc No(s) 3494157

on Cert(s) 827,178

/s/ CARL T. WATANABE
ASSISTANT REGISTRAR

24   2/3   Z1

Return by Mail ( ⊙ ) Pickup (   ) To:

Name:   MIRAD FINANCIAL GROUP
Address: 613 WEST VALLEY PARKWAY, SUITE 305
        ESCONDIDO, CALIFORNIA 92025

TO: 200633316 A

TGE: A63021020

DEBRA N. TOMONO

24 pgs



Tax Map Key No.: 3-1-5-47-155

# MORTGAGE

Loan Number: 4602331
MIN: 1000713-0004602331-9

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A)  "Security Instrument" means this document, which is dated   SEPTEMBER 21, 2006  , together with all Riders to this document.

(B)  "Borrower" is   JACK DENNIS CONROW SR, husband of Olita Conrow, as tenant in severalty.

Borrower is the mortgagor under this Security Instrument.

(C)  "MERS" is Mortgage Electronic Registration Systems, Inc.  MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns.  MERS is the mortgagee under this Security Instrument.  MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

HAWAII--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3012 1/01                                    Page 1 of 14                        DocMagic ⬥Forms 800-649-1362
                                                                                     www.docmagic.com

(D) "Lender" is   MIRAD FINANCIAL GROUP

Lender is a   CALIFORNIA CORPORATION                                           organized
and existing under the laws of   CALIFORNIA
Lender's address is   613 WEST VALLEY PARKWAY, SUITE 305, ESCONDIDO,
CALIFORNIA 92025

(E) "Note" means the promissory note signed by Borrower and dated   SEPTEMBER 21, 2006
The Note states that Borrower owes Lender   THREE HUNDRED EIGHTEEN THOUSAND SEVEN
HUNDRED FIFTY AND 00/100        Dollars (U.S. $ 318,750.00        ) plus interest.
Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than
OCTOBER 1, 2036
(F) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."
(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under
the Note, and all sums due under this Security Instrument, plus interest.
(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders
are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☒ Adjustable Rate Rider | ☐ Planned Unit Development Rider | |
| ☐ Balloon Rider | ☐ Biweekly Payment Rider | |
| ☐ 1-4 Family Rider | ☒ Second Home Rider | |
| ☐ Condominium Rider | ☒ Other(s) [specify] | |

ADDENDUM TO ADJUSTABLE RIDER,
PREPAYMENT RIDER

(I) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and
administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial
opinions.
(J) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges
that are imposed on Borrower or the Property by a condominium association, homeowners association or similar
organization.
(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft,
or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or
magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term
includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by
telephone, wire transfers, and automated clearinghouse transfers.
(L) "Escrow Items" means those items that are described in Section 3.
(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any
third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or
destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in
lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.
(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.
(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note,
plus (ii) any amounts under Section 3 of this Security Instrument.
(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing
regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or
successor legislation or regulation that governs the same subject matter. As used in this Security Instrument,
"RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan"
even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

HAWAII--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3012 1/01                                    Page 2 of 14                    DocMagic eForms 800-649-1362
                                                                                 www.docmagic.com

(Q)   "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

## TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with power of sale, the following described property located in the

County                        of                        HAWAII
[Type of Recording Jurisdiction]                                [Name of Recording Jurisdiction]

SEE COMPLETE LEGAL DESCRIPTION IN EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.
A.P.N.: 3-1-5-47-155

which currently has the address of   15-1665 13TH AVENUE
                                                            [Street]

KEAAU                               , Hawaii       96749       ("Property Address"):
[City]                                                   [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1.   Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check,

HAWAII--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3012 1/01                                Page 3 of 14                        DocMagic eForms 800-649-1362
                                                                                         www.docmagic.com

treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2.   **Application of Payments or Proceeds.**  Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3.   **Funds for Escrow Items.**  Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4.   Charges; Liens.  Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5.   Property Insurance.  Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount

HAWAII--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3012 1/01                                    Page 6 of 14                    DocMagic eFormms 800-649-1362
                                                                                 www.docmagic.com

of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient

to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease. Borrower shall not, without the express written consent of Lender, alter or amend the ground lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement

between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

HAWAII—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3012 1/01                                    Page 9 of 14                          DocMagic eForms 800-649-1362
                                                                                        www.docmagic.com

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality

or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

**NON-UNIFORM COVENANTS.**  Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies.**  Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise).  The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property.  The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale.  If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law.  Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give Borrower notice of sale in the manner provided in Section 15.  Lender shall publish a notice of sale and shall sell the Property at the time and place and under the terms specified in the notice of sale.  Lender or its designee may purchase the Property at any sale.  The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. **Release.**  Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument.  Borrower shall pay any recordation costs.  Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. **Waivers.**  Borrower relinquishes all right of dower and curtesy in the Property.

HAWAII--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3012 1/01                                     Page 12 of 14                      DocMagic *eForms* 800-649-1362
                                                                                                  www.docmagic.com

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_Jack Dennis Conrow Sr_ (Seal)
JACK DENNIS CONROW SR     -Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)
                         -Borrower

Witness:                         Witness:

_____        _____

State of Hawaii *TEXAS*                    )
*COUNTY OF DALLAS*                        ) SS.
County of ~~HAWAII~~                       )

On *September 21, 2006* before me personally appeared
JACK DENNIS CONROW SR

to me known to be the person or persons described in and who executed the foregoing instrument, and acknowledged
that the person or persons executed the same as the person's or persons' free act and deed.

_____
Notary Public

**VENESSA GUTIERREZ**
Notary Public, State of Texas
My Commission Expires
January 04, 2010

(Seal)

_____
*Venessa Gutierrez*
(Typed or Printed Name of Notary Public)

My commission expires: *Jan 04 2010*

TMK: (3) 1-5-047-155

## EXHIBIT "A"

All of those certain parcels of land situate at Keaau, District of
Puna, Island and County of Hawaii, State of Hawaii, described as
follows:

-PARCEL FIRST:-

LOT 1203, area 1.000 acre, more or less, BLOCK 7, as shown on Map 58,
filed in the Office of the Assistant Registrar of the Land Court of
the State of Hawaii with Land Court Application No. 1053 (amended) of
W. H. Shipman, Limited;

-PARCEL SECOND:-

An undivided 1/5750 interest in Lots 60, 62, 8297, 8363, 8385, 8387
and 3115 in Block 7, and Lot 1 in Block 10; as shown on Maps 10, 10,
55, 56, 56, 57, 58 and 65, respectively, of said Land Court
Application No. 1053 (amended); and Lot 4-B, as shown on Map 2 of Land
Court Application No. 1689 of W. H. Shipman, Limited, to be used in
common with others entitled thereto, for roadway and utility purposes
only;

Being the land(s) described in Transfer Certificate of Title No.
746,040 issued to HPP 13TH AVENUE - 155 LIMITED PARTNERSHIP, a Hawaii
Limited Partnership.

Being land(s) described in Transfer Certificate of Title No.
_____827,178_____ and acquired by Land Court Document No.
_____3494156_____.

Subject to any and all liens and/or encumbrances of record.

MIN: 1000713-0004602331-9                    Loan Number: 4602331

# ADJUSTABLE RATE RIDER
### (LIBOR Six-Month Index (As Published in *The Wall Street Journal*) - Rate Caps)

THIS ADJUSTABLE RATE RIDER is made this 21st  day of SEPTEMBER,  2006   ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or
Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure
Borrower's Adjustable Rate Note (the "Note") to MIRAD FINANCIAL GROUP, A
CALIFORNIA CORPORATION
("Lender") of the same date and covering the property described in the Security Instrument and located at:

15-1665 13TH AVENUE, KEAAU, HAWAII 96749
[Property Address]

THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE
INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE
AMOUNT BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND
THE MAXIMUM RATE BORROWER MUST PAY.

ADDITIONAL COVENANTS.  In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

## A.  INTEREST RATE AND MONTHLY PAYMENT CHANGES
The Note provides for an initial interest rate of      7.875 %. The Note provides for changes
in the interest rate and the monthly payments, as follows:

## 4.  INTEREST RATE AND MONTHLY PAYMENT CHANGES
(A)  Change Dates
The interest rate I will pay may change on the 1st    day of OCTOBER, 2011      ,
and on that day every 6th   month thereafter. Each date on which my interest rate could change is called
a "Change Date."
(B)  The Index
Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the
average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market
("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first
business day of the month immediately preceding the month in which the Change Date occurs is called the
"Current Index."
If the Index is no longer available, the Note Holder will choose a new index that is based upon
comparable information. The Note Holder will give me notice of this choice.

MULTISTATE ADJUSTABLE RATE RIDER--LIBOR SIX-MONTH INDEX
(AS PUBLISHED IN *THE WALL STREET JOURNAL*)
Single Family--Fannie Mae MODIFIED INSTRUMENT
Form 3138 1/01                          Page 1 of 3

DocMagic eForms 800-649-1362
www.docmagic.com

(C)   Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding TWO AND 250/1000 percentage points ( 2.250 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

(D)   Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than 13.875 % or less than 2.250 %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than TWO AND 000/1000 percentage points ( 2.000 %) from the rate of interest I have been paying for the preceding 6 months. My interest rate will never be greater than 13.875 %.

(E)   Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

(F)   Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

B.   **TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Uniform Covenant 18 of the Security Instrument is amended to read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan

MULTISTATE ADJUSTABLE RATE RIDER—LIBOR SIX-MONTH INDEX
(AS PUBLISHED IN *THE WALL STREET JOURNAL*)
Single Family—Fannie Mae MODIFIED INSTRUMENT
Form 3138 1/01                    Page 2 of 3

DocMagic eForms  800-649-1362
www.docmagic.com

assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ (Seal)       _____ (Seal)
JACK DENNIS CONROW SR -Borrower                                          -Borrower


_____ (Seal)       _____ (Seal)
-Borrower                                                               -Borrower


_____ (Seal)       _____ (Seal)
-Borrower                                                               -Borrower


MULTISTATE ADJUSTABLE RATE RIDER--LIBOR SIX-MONTH INDEX
(AS PUBLISHED IN THE WALL STREET JOURNAL)
Single Family--Fannie Mae MODIFIED INSTRUMENT
Form 3138 1/01                        Page 3 of 3

DocMagic eForms 800-649-1362
www.docmagic.com

Loan Number: 4602331

# SECOND HOME RIDER

THIS SECOND HOME RIDER is made this 21st day of SEPTEMBER 2006, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower," whether there are one or more persons undersigned) to secure Borrower's Note to MIRAD FINANCIAL GROUP, A CALIFORNIA CORPORATION
(the "Lender") of the same date and covering the Property described in the Security Instrument (the "Property"), which is located at:

15-1665 13TH AVENUE, KEAAU, HAWAII 96749
[Property Address]

In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree that Sections 6 and 8 of the Security Instrument are deleted and are replaced by the following:

**6.  Occupancy.** Borrower shall occupy, and shall only use, the Property as Borrower's second home. Borrower shall keep the Property available for Borrower's exclusive use and enjoyment at all times, and shall not subject the Property to any timesharing or other shared ownership arrangement or to any rental pool or agreement that requires Borrower either to rent the Property or give a management firm or any other person any control over the occupancy or use of the Property.

**8.  Borrower's Loan Application.**  Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's second home.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Second Home Rider.

_____ (Seal)
JACK DENNIS CONROW SR -Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

Loan Number: 4602331

# ADDENDUM TO ADJUSTABLE RATE RIDER

This addendum is made SEPTEMBER 21, 2006    and is incorporated into and deemed to amend and supplement the Adjustable Rate Rider of the same date.

The property covered by this addendum is described in the Security Instrument and located at:
15-1665 13TH AVENUE, KEAAU, HAWAII 96749

## AMENDED PROVISIONS

In addition to the provisions and agreements made in the Security Instrument, I/we further covenant and agree as follows:

## ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES

Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than 13.875  % or less than    2.250  %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than TWO AND 000/1000 percentage point(s) (    2.000  %) from the rate of interest I have been paying for the preceding six (6) months.  My interest rate will never be greater than 13.875 %.  My interest rate will never be less than    2.250 %.

## TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER

Uniform Covenant 18 of the Security Instrument is amended to read as follows:

Transfer of the Property or a Beneficial Interest in Borrower.  As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

DocMagic eForms 800-649-1362
www.docmagic.com

In Witness Thereof, Trustor has executed this addendum.

_____
Witness

_Jack Dennis Conrow SR_   9-21-06
Borrower Signature JACK DENNIS   Date          Borrower Signature                Date
CONROW SR

_____          _____
Borrower Signature              Date          Borrower Signature                Date

_____          _____
Borrower Signature              Date          Borrower Signature                Date

Loan Number: 4602331

# PREPAYMENT RIDER
## (Multi-State)

This Prepayment Rider is made this 21st day of SEPTEMBER, 2006 and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note (the "Note") to MIRAD FINANCIAL GROUP, A CALIFORNIA CORPORATION

(the "Lender") of the same date and covering the property described in the Security Instrument and located at

15-1665 13TH AVENUE, KEAAU, HAWAII 96749

(the "Property").

**Additional Covenants.** Notwithstanding anything to the contrary set forth in the Note or Security Instrument, Borrower and Lender further covenant and agree as follows:

Borrower has the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." A "full prepayment" is the prepayment of the entire unpaid principal due under the Note. A payment of only part of the unpaid principal is known as a "partial prepayment."

If, within the 36 month(s) period beginning with the date Borrower executes the Note (the "Penalty Period"), Borrower makes a full prepayment, or partial prepayment in any twelve (12)-month period that exceeds 20% of the original principal loan amount, Borrower will pay a prepayment charge as consideration for the Note Holder's acceptance of such prepayment. The prepayment charge will equal the amount of interest that would accrue during a six (6)-month period on the amount prepaid that exceeds 20% of the original principal balance of the Note, calculated at the rate of interest in effect under the terms of the Note at the time of the prepayment, unless otherwise prohibited by applicable law or regulation. No prepayment charge will be assessed for any prepayment occurring after the Penalty Period.

Notwithstanding the foregoing, in the event of a full prepayment concurrent with a bona fide sale of the Property to an unrelated third party after the first 0 month(s) of the term of the Note, no prepayment penalty will be assessed. In that event, Borrower agrees to provide the Note Holder with evidence acceptable to the Note Holder of such sale.

By signing below, Borrower accepts and agrees to the terms and covenants contained in this Prepayment Rider.

_Jack Dennis Conrow SR_ (Seal)
JACK DENNIS CONROW SR -Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

PREPAYMENT RIDER - 603B2 Multi-State
11/15/99

DocMagic €Forms 800-649-1362
www.docmagic.com

EXHIBIT "C"

## NOTICE OF MORTGAGEE'S INTENTION TO FORECLOSE UNDER
## POWER OF SALE

TS No: 1200013-06   Loan No: XXXXXX6175   Title No: 4028721

Mortgagor/Borrower: **JACK DENNIS CONROW SR., HUSBAND OF OLITA CONROW, AS TENANT IN SEVERALTY**

**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., SOLELY ASNOMINEE FOR AURORA LOAN SERVICES LLC** whose address is **2617 COLLEGE PARK DRIVE SCOTTSBLUFF NE 69361-2294** , as mortgagee pursuant to Hawaii Revised Statutes 667-5 through 667-10 as amended, and that mortgage dated **September 21, 2006** and recorded on **October 06, 2006** in the Bureau of Conveyances in the County of **HAWAII**, State of Hawaii, Regular Document System, as Document No 3494157, on Transfer Certificate Title No. 827,178, gives notice that Mortgagee will hold a sale by public auction on **September 11, 2009 at 12:00 noon At the flagpole fronting the Third Circuit Court Building at 75 Aupuni Street, HILO, Hawaii**, of real property located at **15-1665 13TH AVENUE KEAAU HI 96749** . Fee Simple as Tax Map Key Number of (3) **1-5-047-155-0000, COMPLETELY DESCRIBED IN SAID MORTGAGE.**

Terms of the sale are: (1) No upset price; (2) Property is sold strictly in "AS IS" and "WHERE IS" condition; (3) Property is sold without covenant or warranty, either express or implied, as to title, possession or encumbrances; (4) At the close of the auction, Purchaser shall pay at least 10% of the highest successful bid price ("Bid") in cash, or by cashier's or certified check; provided, however, that Mortgagee may submit a credit bid up to the amount of the secured indebtedness; (5) The property shall be conveyed by Mortgagee by mortgagee's quitclaim conveyance, provided by Mortgagee, within 30 days after the auction and upon performance by Purchaser, no later than 21 days after the auction, of the following obligations: (a) In order to comply with recording the Mortgagee's Affidavit within the statutory timeframe, no later than thirty days from the date of sale, purchaser shall deliver to **Cal-Western Reconveyance Corporation @ 525 East Main Street, El Cajon CA 92022** a cashier's check for the remaining balance of the bid price, no later than the 21st day following sale; (b) Purchaser shall pay all closing costs including, but not limited to: costs of document drafting, notary fees, consent fees, conveyance tax, recordation fees and other charges, together with any assessments which may arise under HRS § 514A-90 et sec.; and (c) Any real property taxes and lease rents shall be paid by Purchaser and not be prorated; (6) The availability of title or other insurance shall not be a condition of the sale, and the Purchaser shall be responsible for obtaining a certificate of title and title insurance, if so desired; (7) The obligation for taxes, lease/ground rent, common expenses and similar charges shall be the responsibility of the purchaser; (8) The Purchaser shall not take occupancy prior to confirmation of the sale, and responsibility of securing possession of the property as of confirmation of the sale shall be with the Purchaser; (9) Time is of the essence in this transaction and any delay in performance by Purchaser which prevents the closing from occuring within 30 days after the auction shall cause Mortgagee to sustain damages in amounts which will be difficult to ascertain. In the event the sale does not close because of any delay in performance by the Purchaser as herein stated, the 10% down payment may be retained by Mortgagee as liquidation damages and not as a penalty; (10) By submitting the Bid, Purchaser acknowledges reading the terms and conditions set forth in this notice and agrees to be bound thereby and sign a written acceptance of all terms herein; and (11) This sale may be postponed from time to time by public announcement made by Mortgagee or someone acting on Mortgagee's behalf.

**NOTICE IS HEREBY GIVEN THAT THIS FIRM IS ATTEMPTING TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE, AND THAT THE DEBT MAY BE DISPUTED. HOWEVER, IF YOU HAVE OR ARE IN THE PROCESS OF OBTAINING DISCHARGE OF THE DEBT FROM A BANKRUPTCY COURT, THIS DOCUMENT IS NOT AN ATTEMPT TO COLLECT A DEBT, BUT ONLY ENFORCEMENT OF LIEN RIGHTS AGAINST THE PROPERTY.**

Inquiries should be directed to **DAVID B. ROSEN, ESQ.** at **(808)523-9494**
EMAIL:ROSENLAW-FORECLOSURE@HAWAII.RR.COM
**810 RICHARDS STREET, SUITE 880
HONOLULU, HI 96813**

| **STATE OF HAWAI'I**<br>CIRCUIT COURT OF THE<br>THIRD CIRCUIT | **SUMMONS**<br>**TO ANSWER CIVIL COMPLAINT** | CASE NUMBER |
|---|---|---|

| PLAINTIFF<br>JACK DENNIS CONROW, SR. | vs. | DEFENDANT MIRAD FINANCIAL GROUP,<br>MORTGAGE ELECTRONIC REGISTRATION<br>GROUP, AURORA LOAN SERVICES LLC,<br>JOHN DOES 1-9, JANE DOES 1-9, DOE<br>PARTNERSHIPS 1-9, DOE CORPORATIONS<br>1-9, DOE LIMITED LIABILITY COMPANIES<br>1-9, DOE ENTITIES 1-9, and DOE<br>GOVERNMENTAL ENETITIES 1-9. |
|---|---|---|

PLAINTIFF'S ADDRESS (NAME, ADDRESS, TEL. NO.)
ATTORNEY TERRY G. OPPERMANN #2764
Seven Waterfront Plaza
500 Ala Moana Blvd., Suite 7-400
Honolulu, HI 96813-4920
PH: (808) 543-8330
FAX: (808) 833-2744

TO THE DEFENDANT(S):

You are hereby summoned and required to serve upon plaintiff's attorney, whose address is stated above, and answer to the complaint which is attached. This action must be taken within twenty days after service of this summons upon you, exclusive of the day of service.

If you fail to make your answer within the twenty day time limit, judgment by default will be taken against you for the relief demanded in the complaint.

**This summons shall not be personally delivered between 10:00 p.m. and 6:00 a.m. on premises not open to the general public, unless a judge of the above-entitled court permits, in writing on this summons, personal delivery during those hours.**

**A failure to obey this summons may result in an entry of default and default judgment against the disobeying person or party.**

 If you have needs due to a disability, please contact the Disability Accommodations Coordinator for the First Circuit at 539-4399 (V) or 539-4853 (TTY).

| DATE ISSUED<br>SEP 0 9 2009 | CLERK<br>LORNA K. CHINEN (SEAL) |
|---|---|

| I do hereby certify that this is a full, true, and correct copy of the original on file in this office. | CIRCUIT COURT CLERK |
|---|---|

1C-P-306

SUMMONS TO ANSWER CIVIL COMPLAINT